IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BENSON ROBERT NEAL, JR.,

        Petitioner,               No. CIV S-02-0719 FCD JFM P

      vs.

TOM L. CAREY,

        Respondent.        FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of violating California Penal Code § 4573.6, possession of heroin in prison. Petitioner admitted three prior serious felony convictions alleged pursuant to Cal. Penal Code §§ 667. (b) - (i) and 1170.12. (CT 6-9.)

        Petitioner claims that the trial court's refusal to instruct the jury on the defense theory of temporary possession for the purpose of disposal was error requiring reversal, and that the trial court erred in using a circumstance that is an element of the substantive offense as a factor in aggravation, requiring petitioner to be resentenced.

PROCEDURAL BACKGROUND

        Petitioner was convicted on January 6, 2000. On February 25, 2000, the state trial court struck two of the prior serious felony convictions and sentenced petitioner to state prison

1

for eight years, to run consecutively to the sentence petitioner was already serving.  (Answer, Ex. B.)  Petitioner appealed his conviction and on March 27, 2001, the Court of Appeal of the State of California, Third Appellate District, affirmed the judgment and sentence.  (Answer, Ex. B.)  On May 9, 2001, petitioner filed a petition for review in the California Supreme Court.  (Answer, Ex. C.)  On June 13, 2001, the California Supreme Court denied the petition.  (Answer, Ex. D.)

Petitioner filed the present habeas action on April 8, 2002.

FACTUAL BACKGROUND[1]

[Petitioner], an inmate at Folsom State Prison, resisted and scuffled with correctional officers Juan Borrego and Chris Johns as they attempted to conduct a clothed body search of [petitioner].  Officer Johns opened [petitioner's] right hand and found a bindle containing tar heroin.  Two additional bindles containing tar heroin were found near where the scuffle took place.

The three bindles contained .08, .06, and .07 grams of tar heroin, respectively, each of which was a usable amount.  The total street value of the heroin was approximately $400.

During his trial testimony, [petitioner] presented the following scenario:

He was sweeping the prison stairwell when he came upon the heroin.  Knowing the substance was contraband, he believed that he could improve his chances of obtaining a parole date if he picked up the contraband and turned it over to a correctional officer.  Thus, he decided to take it to Captain Hickman, an officer with whom [petitioner] felt comfortable.  He thought that Hickman might put a beneficial entry into his file.

[Petitioner] initially hid the heroin under a trash bin.  Later that day, he had a brief conversation with Captain Hickman, telling her he needed to speak with her "about something very important."  Hickman replied that she would try to have [petitioner] called to her office. [Petitioner] then retrieved the heroin and hid it inside a crack in the wall behind a firebox.

On the following day, [petitioner] went to Captain Hickman's office, but she was not there.  He returned the next day, but again he did not see her in the office.  Three days after he discovered the

---

[1] The following summary is drawn from the March 27, 2001 opinion by the California Court of Appeal, Third Appellate District, at 2-3, attached as Exhibit B to Respondent's Answer (hereinafter Opinion).  These facts are fairly supported by the record.

heroin, he was carrying it to Hickman's office when officers Borrego and Johns stopped and searched him.

[Petitioner] admitted that he could have sent Captain Hickman a note describing his discovery, but he decided instead to try to meet with her in person.

Captain Hickman testified that she did not recall talking to [petitioner].  Her duties required her to spend the majority of the time in her office.

(People v. Neal, slip opinion at 2-3.)

I.  General Standards

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court

1   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

2   application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

3   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

4   question, is left with a 'firm conviction' that the state court was 'erroneous.'")

5          The court looks to the last reasoned state court decision as the basis for the state

6   court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

7   reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

8   habeas court independently reviews the record to determine whether habeas corpus relief is

9   available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

10  II.  Jury Instruction Claim

11         Petitioner claims that the trial court's refusal to instruct the jury on the defense's

12  theory of temporary possession for the purpose of disposal was error requiring reversal.

13         The California Court of Appeal addressed this issue as follows:

14         In an in limine motion, [petitioner's] trial counsel asked the court
            to instruct the jury with CALJIC No. 12.06, which states that
15         possession of contraband is not unlawful if the possession is
            "solely for the purpose of abandonment, disposal, or destruction." [2]
16         In support of his request, defense counsel made an offer of proof
            that [petitioner] would testify as follows: He came upon the heroin
17         while working on the prison grounds and decided to retain it until
            he could hand it over to Captain Hickman.  From the time he
18         discovered the contraband, he intended to dispose of it; but he

19

20         [2]  CALJIC No. 12.06 (1999 Revision) provides in pertinent part: "A person is not guilty
      of a crime when his or her possession of [a controlled substance] . . . is shown to be lawful.  The
21    defendant has the burden of proving by a preponderance of the evidence all of the facts necessary
      to establish that his or her possession of the [controlled substance] . . . is lawful. [P] The
22    possession of a [controlled substance] . . . is lawful where all of the following conditions are met:
      [P] 1.  The possession is [momentary and] based on neither ownership nor the right to exercise
23    control over the (item, controlled substance, etc.); [P] 2.  The (item, controlled substance, etc.) is
      possessed solely for the purpose of abandonment, disposal, or destruction; [P] 3.  The (item,
24    controlled substance, etc.) is possessed for the purpose of terminating the unlawful possession of
      it by another person or preventing another person from acquiring possession of it; and [P] 4.
25    Control is not exercised over the (item, controlled substance, etc.) for the purpose of preventing
      its imminent seizure by law enforcement. [P] [Length of time of possession is one of the factors
26    that may be considered in deciding whether the defendant physically handled the substance solely
      for abandonment, disposal, or destruction.]"

                                              4

wanted to do so in a way that might result in a favorable notation in his prison folder.

The People argued that [petitioner] was not entitled to the instruction because his possession of the contraband was not momentary.  The trial court agreed and refused to instruct with CALJIC No. 12.06.

[Petitioner] correctly points out that, even if his testimony was not of a character to inspire belief, he was entitled to an instruction based on a hypothesis that is entirely true.  (*People v. Sullivan* (1989) 215 Cal.App.3d 1446, 1450.)  Nevertheless, his argument that the trial court erred in refusing the requested CALJIC No. 12.06 instruction fails for two independent reasons.

First, as [petitioner] acknowledges, it has been held that, absent extraordinary circumstances, the defense of temporary possession of contraband solely for disposal does not apply to the possession of contraband in a penal institution.  (*People v. Brown* (2000) 82 Cal.App.4th 736, 740; review den. [dealing with an inmate's possession of a weapon fashioned out of a razor blade.])

The inmate in *People v. Brown* claimed he found the weapon on prison grounds, picked it up out of concern for his safety and the safety of others, put it into his pocket, and was stopped and searched as he was walking to an outdoor toilet to dispose of the weapon.  (82 Cal.App.4th 739.)  Rejecting the argument that the inmate was entitled to a temporary possession for disposal defense, the court held:  "The factors which may militate toward temporary possession for disposal purposes or for the protection of others . . . do not apply in a penal institution. [Petitioner] could have simply alerted a guard to the existence of the weapon without picking it up.  We do not believe the Legislature, by the enactment of [] section 4502, sanctioned self-help or knowing possession of weapons under the circumstances presented here.  Whether there can *ever* be a circumstance justifying temporary possession in a penal institution is a question not presently before us.  We simply conclude the judge was correct in denying CALJIC No. 12.06" (*Id.* at p. 740, orig. italics.)

[Petitioner] criticizes this holding as being unrealistic because, in his view, it "wrongly assumes that the [inmate] could readily and immediately alert a prison guard to the [contraband's] presence.  If there was no guard in the immediate vicinity, the court's recommendation would require the [inmate] to leave the area and find one, and in the meantime[,] another inmate could easily pick up the weapon and wield it against [the inmate[ or other inmates or staff, or pocket the weapon to use for a future nefarious purpose.  If the [inmate] stood 'guard' over the weapon before a correctional officer could possess it, he might well attract the attention of other inmates, who would seize it and use it against him."

5

While [petitioner's] argument has some convincing force with respect to a weapon, it does not carry over to contraband like heroin, the possession of which by another inmate would not have posed an imminent danger to [petitioner], to other inmates, or to prison staff.  Because it presented no imminent danger, there was no compelling reason for [petitioner] to have picked up the heroin.  Even if his motive for doing so was to dispose of the heroin in a manner that could benefit him, [petitioner] simply could have alerted a guard to the existence of the contraband.  Hence, the appellate court's reasoning in *People v. Brown* is appropriate for the facts of this case.  At least with respect to illicit drugs, we agree that the Legislature's enactment of section 4573.6 was not intended to sanction self-help or knowing possession of heroin by an inmate, even if for the purpose of disposal.  (*People v. Brown, supra,* 82 Cal.App.4th at p. 740.)  Without such a bright line rule, the purpose and deterrent effect of section 4573.6 would be compromised.

Second, and in any event, the weight of authority, including a decision of this court, holds that a defendant is not entitled to the temporary possession for disposal defense when the possession of contraband was not momentary.  [Petitioner] recognizes this, but urges us to follow the minority view espoused in *People v. Cole* (1988) 202 Cal.App.3d 1439.  We decline to do so for reasons that follow.

CALJIC No. 12.06 is derived from *People v. Mijares* (1971) 6 Cal.3d 415 (*Mijares*), in which the appellant presented credible evidence that, in an effort to dispose of a narcotic possessed by a friend who appeared to be under the influence of a narcotic, the appellant (who was not an inmate at the time) grabbed a handkerchief containing heroin and an injection kit that was in the friend's possession and threw it into a nearby field.  (*Id.* at pp. 417-419.)  The Supreme Court held that it "would be incongruous to adhere to cases declaring that abandonment concludes an existing narcotic possession and then hold that during the brief moment involved in abandoning the narcotic, a sufficient possession which did not previously exist somehow comes into being to support a conviction for possession of contraband."  (*Id.* at p. 422.)  Therefore, the appellant was entitled to an instruction informing the jury that "merely handling [a narcotic] for only brief moments prior to abandoning the narcotic" does not constitute illegal possession of the drug.  (*Id.* at p. 423.)

*People v. Cole, supra,* 202 Cal.App.3d 1439 (Cole) interpreted the *Mijares* holding to extend beyond the type of fleeting possession that occurred in *Mijares*.  According to *Cole*, the critical issue is not the length of time of the handling, but whether the defendant physically handled the substance solely for the purpose of disposal.  (*Id.* at p. 1445.)

6

A number of decisions, including one by this court (*People v. Frazier* (1998) 63 Cal.App.4th 1307 (*Frazier*)), have rejected *Cole's* holding.

For example, in *People v. Sullivan, supra,* 215 Cal.App.3d 1446 (*Sullivan*), the appellant was stopped while driving a truck that reeked of the smell of chemicals associated with the manufacturing of methamphetamine. A search of the truck yielded chemicals and equipment used to manufacture methamphetamine, and a search of the appellant's person revealed a baggie containing methamphetamine. At trial, the appellate testified that he had discovered the contraband in a shed that he had rented to a person. Afraid to call police because he was on probation for a drug offense, the appellant loaded the contraband into his truck and was on his way to an industrial park to dispose of it in a dumpster, but was pulled over by the police before he could do so. Citing *Cole*, he claimed the trial court erred in refusing to instruct with CALJIC No. 12.06 (*Sullivan, supra,* at pp. 1448-1450.)

*Sullivan* disagreed. It explained: "We think the *Cole* court, by abandoning the requirement the possession be 'fleeting,' has unreasonably expanded the *Mijares* rule. *Mijares's* rule arose from a situation involving a fleeting, de minim[u]s possession and a reflexive act of abandonment. The Supreme Court's holding was that this de minim[u]m possession and reflexive response was not a criminal possession [and the holding constituted] an understandable and simple rule. *Cole* complicates the rule by bringing in inquiries into the defendant's subjective intent in possessing the contraband. These inquiries are not suggested by *Mijares* or supported by the language of the statute. *Mijare's* focus was on the fleeting nature of the possession (during the instant of abandonment), not on the subjective mental state of the defendant. The statute makes possession illegal without regard to the specific intend in possessing the substance. We conclude the *Cole* court misinterpreted the *Mijares* decision and erred in deleting the 'momentary' possession requirement." (*Sullivan, supra,* 215 Cal.App.3d at p. 1452.)

In *Frazier*, methamphetamine and paraphernalia were found in the appellant's bedroom. He claimed that his brother had visited the day before the search and the appellant found the contraband on the dining room table after his brother left. The appellant further claimed that he handed drugs and paraphernalia to his wife and asked her to get rid of them. (*Frazier, supra,* 63 Cal.App.4th at p. 1309.) Rejecting the argument that he was entitled to a CALJIC No. 12.06 instruction, we agreed with *Sullivan* that *Cole* had "misinterpreted the *Mijares* decision and erred in deleting the 'momentary' possession requirement." (*Frazier, supra,* at p. 1311.) Thus, we concluded: "Defendant's lengthy possession of the contraband denied him the right to a momentary possession instruction despite his stated intent to get

7

1     rid of the drugs." (*Id.* at p. 1312; *see also People v. Hurtado*
(1996) 47 Cal.App.4th 805, 809-815.)

2

3          Suggesting that *Cole* not *Sullivan* is the better reasoned
opinion, [petitioner] urges us to "reconsider [this court's] adoption

4     of *Sullivan* in the context of this case." We decline to do so
because, in our view, the appropriate rule is the one set forth in

5     *Sullivan* and *Frazier*: for a defendant to be entitled to an instruction
on the temporary possession for disposal defense (CALJIC No.

6     12.06), the evidence must show defendant's possession is fleeting,
momentary, i.e., de minim[u]s.

7          Here, [petitioner's] testimony established that he
maintained exclusive possession and control of the contraband for

8     three days before he was searched and the contraband discovered.
Moreover, at the time of the search, he scuffled with the officers

9     instead of simply turning the contraband over to them. Under these
circumstances, [petitioner] was not entitled to the CALJIC No.

10    12.06.

11    (<u>People v. Neal</u>, slip opinion. at 3-10.) Subsequent to petitioner's conviction herein, the

12    California Supreme Court reaffirmed the cases relied upon by the appellate court (*Sullivan,*

13    *Frazier and Hurtado*) and rejected the case that held to the contrary (*Cole*). <u>People v. Martin</u>, 25

14    Cal.4th 1180, 1190-92 (2001).

15         A challenge to jury instructions does not generally state a federal constitutional

16    claim. <u>See</u> <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985), <u>cert. denied</u>, 478 U.S. 1021

17    (1986) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)); <u>Gutierrez v. Griggs</u>, 695 F.2d 1195,

18    1197 (9th Cir. 1983). Habeas corpus is unavailable for alleged error in the interpretation or

19    application of state law. <u>Middleton</u>, 768 F.2d at 1085; <u>see also</u> <u>Lincoln v. Sunn</u>, 807 F.2d 805,

20    814 (9th Cir. 1987); <u>Givens v. Housewright</u>, 786 F.2d 1378, 1381 (9th Cir. 1986). However, a

21    "claim of error based upon a right not specifically guaranteed by the Constitution may

22    nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire

23    trial that the resulting conviction violates the defendant's right to due process." <u>Hines v.</u>

24    <u>Enomoto</u>, 658 F.2d 667, 673 (9th Cir. 1981) (citing <u>Quigg v. Crist</u>, 616 F.2d 1107 (9th Cir.

25    1980), <u>cert. denied</u>, 449 U.S. 922 (1980)); <u>see also</u> <u>Lisenba v. California</u>, 314 U.S. 219, 236

26    (1941).

1    In order to warrant federal habeas relief, a challenged jury instruction "cannot be

2  merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due

3  process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317

4  (9th Cir. 1988), cert. denied, 488 U.S. 861 (1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146

5  (1973).  To prevail, petitioner must demonstrate that an erroneous instruction "'so infected the

6  entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62,

7  72 (1991) (quoting Cupp, 414 U.S. at 147).  In making its determination, this court must evaluate

8  the challenged jury instructions "'in the context of the overall charge to the jury as a component

9  of the entire trial process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228,

10 1239 (9th Cir. 1984), cert. denied, 469 U.S. 838 (1984)).  Further, in reviewing an allegedly

11 ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the

12 jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502

13 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).

14    Where, as here, the challenge is to a refusal or failure to give an instruction, the

15 petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction, is

16 less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145,

17 155 (1977).  See also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

18    Petitioner contends the refusal to instruct the jury with CALJIC 12.06 deprived

19 him of his constitutional right to present a defense.

20    Criminal defendants have a constitutional right, implicit in the Sixth Amendment,

21 to present a defense; this right is "a fundamental element of due process of law." Washington v.

22 Texas, 388 U.S. 14, 19 (1967).  Further, "[a]s a general proposition a defendant is entitled to an

23 instruction as to any recognized defense for which there exists evidence sufficient for a

24 reasonable jury to find in his favor." Bradley v. Duncan, 315 F.3d 1091, 1097 (9th Cir. 2002),[3]

25

26    [3]  The Bradley court held that where a trial court had determined that an entrapment
instruction was required in a trial that ended in a mistrial, the instruction was also required to be

9

cert. denied, 540 U.S. 963 (2003) (quoting Mathews v. United States, 485 U.S. 58, 63 (1988).

Such is the case "even though the evidence may be weak, insufficient, inconsistent, or of

doubtful credibility." United States v. Escobar de Bright, 742 F.2d 1196, 1198 (9th Cir. 1984)

(quoting United States ex rel. Peery v. Sielaff, 615 F.2d 402, 403 (7th Cir. 1979)). See also

United States v. Sarno, 73 F.3d 1470, 1485 (9th Cir. 1995).  Failure to correctly instruct the jury

on the defendant's theory of defense may constitute a due process violation. Bradley, 315 F.3d at

1099; see also United States v. Rodriguez, 45 F.3d 302, 306 (9th Cir. 1995); United States v.

Yarbrough, 852 F.2d 1522, 1541 (9th Cir. 1988).  Conversely, a defendant is not entitled to a jury

instruction on a defense theory unless there is some evidence before the jury to support it. United

States v. Bowman, 720 F.2d 1103, 1105 (9th Cir. 1983); see also United States v. Podlog, 35

F.3d 699, 704 (2d Cir. 1994) (absent the presentation of some evidence supporting all elements

of the defense of coercion and duress, the court need not submit the defense to the jury).

A criminal defendant also has the right to have a jury resolve disputed factual

issues. United States v. Dorrell, 758 F.2d 427, 430 n.2 (9th Cir. 1985).  However, where the

evidence, even if believed, does not establish all of the elements of a defense, the trial judge need

not submit the defense to the jury. Id. at 430.  "The sole question presented in such situations is

whether the evidence, as described in the defendants' offer of proof, is insufficient as a matter of

law to support the proffered defense.  If it is, then the trial court should exclude the defense and

the evidence offered in support." Dorrell, 758 F.2d at 430.

Petitioner has failed to sustain his "heavy burden" of demonstrating a miscarriage

of justice based upon the trial court's failure to give the requested instruction.  Here, it was

undisputed that petitioner possessed the heroin for a period of three days.  The defense proffered

required that petitioner hold the drug temporarily or for a momentary period.  The state court

found that a period of three days did not equate to temporary possession.  Under state law, this

given in the subsequent retrial where "no additional evidence to the contrary" rebutted the prior
ruling. Id. at 1098.

1  defense was unavailable to petitioner because he could not demonstrate his possession was

2  temporary, thus failing to establish all elements of the defense.

3          Because petitioner could not demonstrate his possession of the heroin was

4  temporary, based on the state court's interpretation of its own statute, California Penal Code

5  § 4573.6, the trial court was not bound to give CALJIC 12.06.  Thus, the failure of the trial court

6  to instruct the jury with CALJIC 12.06 did not violate petitioner's due process rights.

7  Accordingly, this claim should be denied.

8  III.  Alleged Sentencing Error

9          Petitioner contends the trial court erred in using a circumstance that is an element

10  of the substantive offense as a factor in aggravation, and alleges this error requires the case be

11  remanded for resentencing.  In support of this claim, petitioner argues that had trial counsel

12  objected, "the court would have imposed the midterm upon a considered choice given the many

13  mitigating factors set forth by trial counsel and those cited by the court in its decision to strike the

14  priors."  (Petition at 5.)

15          Respondent correctly notes petitioner failed to exhaust this claim because he

16  failed to present it to the California Supreme Court.  (Answer, Ex. C.)  The court may, however,

17  deny a federal habeas corpus claim on the merits notwithstanding petitioner's failure to exhaust

18  state court remedies.  See 28 U.S.C. § 2254(b)(2).

19          On direct appeal, the state court addressed this claim as follows:

20          [Petitioner] admitted having three prior serious felony convictions
            within the meaning of the three strikes law, but the court struck
21          two of the convictions pursuant to section 1385 and sentenced
            [petitioner] to a term of eight years (double the upper term of four
22          years) to run consecutively to the sentence [petitioner] was then
            serving.  The court stated the upper term for being an inmate in
23          possession of heroin was "called for with [petitioner's] prior
            convictions [and] the fact that he was in prison setting."
24
            [Petitioner] takes issue with the trial court's decision to
25          sentence him to the upper term.  His claim centers on the court's
            comment that the upper term was appropriate in part because his
26          possession of contraband "was in a prison setting."  He argues this

11

was an impermissible use of an element of the offense as a factor in aggravation.  (Cal. Rules of Court, rule 420(d) ["A fact that is an element of the crime shall not be used to impose the upper term"]; Pen. Code, § 4574.6 [an element of the offense is that it occurred in prison].)

According to [petitioner], we should remand for resentencing because a proper balancing of the sentencing factors "may well favor a more lenient punishment in light of the multiple and substantial mitigating factors that the trial court cited on the record here to explain its rationale for striking the priors."

The contention is waived because [petitioner] failed to raise the issue in the trial court and thus is barred from raising it on appeal.  (*People v. Scott* (1994) 9 Cal.4h 331, 356.)

[Petitioner] correctly anticipates our application of the waiver doctrine but urges us not to apply the procedural bar because, he argues, his trial counsel's "failure to object to the trial court's imposition of the upper term was inexcusable."

This contention is frivolous.  [Petitioner's] trial counsel was impressively successful in convincing the trial court to strike two of [petitioner's] prior serious felony convictions, and thus saved [petitioner] from a term of 25 years to life.  Trial counsel asserted that such extraordinary relief was appropriate because the court could punish [petitioner] adequately by doubling whichever base term "you [the court] think is appropriate."  After striking the prior convictions, the court stated a legitimate reason for imposing the upper term – [petitioner's] prior criminal history.  (Cal. Rules of Court, rule 421(b)(2).)  As trial counsel undoubtedly knew, only a single aggravating factor is required to impose the upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 728.)  Under the circumstances, it would have been incredible chutzpah, and just plain stupidity, for [petitioner's] trial counsel to have protested that the court cited an element of the offense as a superfluous reason for imposing the upper term.  As those who have been trial attorneys readily know, when you have received a great deal for your client, it is better to quit while you are ahead than to advance an argument that has no reasonable probability of securing a better result, and only may alienate the court against your client.  For this reason, "[i]t is not incumbent upon trial counsel to . . . undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel."  (*People v. Constancio* (1974) 42 Cal.App.3d 533, 546.)

Trial counsel's failure to raise the objection asserted on appeal was not "inexcusable"; instead, it demonstrated good judgment.

(People v. Neal, slip opinion at 10-12.)

1         This claim essentially involves an interpretation of state sentencing law.  "[I]t is

2    not the province of a federal habeas court to reexamine state court determinations on state law

3    questions."  <u>Estelle</u>, 502 U.S. at 67.  Habeas corpus relief is unavailable for alleged errors in the

4    interpretation or application of state sentencing laws by either a state trial court or a state

5    appellate court.  <u>Hendricks v. Zenon</u>, 993 F.2d 664, 674 (9th Cir. 1993).  So long as a state

6    sentence "is not based on any proscribed federal grounds such as being cruel and unusual,

7    racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state

8    statutes are matters of state concern."  <u>Makal v. State of Arizona</u>, 544 F.2d 1030, 1035 (9th Cir.

9    1976).  Thus, "[a]bsent a showing of fundamental unfairness, a state court's misapplication of its

10   own sentencing laws does not justify federal habeas relief."  <u>Christian v. Rhode</u>, 41 F.3d 461,

11   469 (9th Cir. 1994).

12        Under California's Three Strikes law, a defendant may be considered to have two

13   prior strikes even though he was convicted of both qualifying offenses in a single judicial

14   proceeding.  <u>People v. Askey</u>, 49 Cal.App.4th 381, 56 Cal.Rptr.2d 782, 785 (Ct.App.1996).

15        The state court record reflects that prior to the sentencing proceedings, defense

16   counsel filed a motion to strike petitioner's prior felony convictions sustained in 1982 from one

17   criminal action based on the fact petitioner had no record of disciplinary difficulty in that he had

18   worked his way from a level 12 to a level 2; since being incarcerated in 1982 petitioner had

19   sustained no new criminal prosecutions; he received his GED while in prison; he was fifty years

20   old and still not eligible for parole on his current sentence; and he acknowledged his part in the

21   prior offenses and did not try to minimize his participation in the offenses underlying his current

22   sentence. (CT 92.)

23        At the hearing on the motion, the judge indicated he had read the probation report

24   (CT 95-107), as well as defense counsel's motion to strike petitioner's prior conviction under

25   <u>People v. Romero</u> (citation omitted).  (RT 280.)  The judge stated that based on the amount of the

26   drugs involved, the fact petitioner had kept his record clean over the last 18 years, petitioner's

13

1   involvement in some prison rehabilitation classes and "given the nature of this offense, the way it

2   was found and his defense that he was going to turn it in" (RT 291), the judge would exercise his

3   discretion.  (RT 291.)  The judge struck prior number two and prior number three in the interest

4   of justice (RT 291), and sentenced petitioner to an upper term of four years in state prison, which

5   was then doubled pursuant to Cal. Penal Code § 667(b)(i) Three Strikes Law, for a total sentence

6   of 8 years.  (RT 293.)

7          The trial court's decision not to strike all of petitioner's prior felony convictions

8   was not fundamentally unfair.  This decision with respect to the application of state sentencing

9   law is not contrary to or an unreasonable application of federal law and does not justify federal

10  habeas relief.  Further, after a review of the sentencing proceedings, this court finds no federal

11  constitutional violation in the state trial judge's exercise of his sentencing discretion.

12  Accordingly, petitioner is not entitled to relief on this claim.[4]

13         To the extent petitioner attempts to challenge the effectiveness of his defense

14  counsel based on counsel's failure to object to the imposition of the upper term, this claim fails

15  for the reasons set forth in the state court opinion.  (People v. Neal, slip opinion at 11-12.)

16         The United States Supreme Court set forth the test for demonstrating ineffective

17  assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must

18  show that, considering all the circumstances, counsel's performance fell below an objective

19  standard of reasonableness.  Strickland, 466 U.S. at 688.  To this end, petitioner must identify the

20  acts or omissions that are alleged not to have been the result of reasonable professional judgment.

21  Id. at 690.  The federal court must then determine whether in light of all the circumstances, the

22  identified acts or omissions were outside the wide range of professional competent assistance.

23

24         [4] If petitioner's sentence had been imposed under an invalid statute and/or was in excess
     of that actually permitted under state law, a federal due process violation would be presented.
25  See Marzano v. Kincheloe, 915 F.2d 549, 552 (9th Cir. 1990) (due process violation found where
     petitioner's sentence of life imprisonment without the possibility of parole could not be
26  constitutionally imposed under the state statute upon which his conviction was based).  However,
     petitioner has not made that showing here.

1  <u>Id.</u>  "We strongly presume that counsel's conduct was within the wide range of reasonable

2  assistance, and that he exercised acceptable professional judgment in all significant decisions

3  made."  <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing <u>Strickland</u>, 466 U.S. at 689).

4          Second, a petitioner must affirmatively prove prejudice.  <u>Strickland</u>, 466 U.S. at

5  693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

6  unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A

7  reasonable probability is "a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>;

8  <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. at 391-92; <u>Laboa v. Calderon</u>, 224 F.3d 972, 981 (9th Cir.

9  2000).  A reviewing court "need not determine whether counsel's performance was deficient

10  before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . .

11  . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice

12  . . . that course should be followed."  <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955 (9th Cir. 2002)

13  (quoting <u>Strickland</u>, 466 U.S. at 697).

14          An attorney's failure to make a meritless objection or motion does not constitute

15  ineffective assistance of counsel.  <u>Jones v. Smith</u>, 231 F.3d 1227, 1239 n. 8 (9th Cir.2000) (citing

16  <u>Boag v. Raines</u>, 769 F.2d 1341, 1344 (9th Cir.1985)); <u>See also</u> <u>Rupe v. Wood</u>, 93 F.3d 1434,

17  1445 (9th Cir.1996) ("the failure to take a futile action can never be deficient performance").

18  Plaintiff has failed to demonstrate that had defense counsel objected to the imposition of the

19  upper term that the trial court would have sustained the objection and imposed only a midterm

20  punishment.  Indeed, based on petitioner's criminal history alone, it is unlikely the trial court

21  would have done so.  Thus, the California Court of Appeals' decision rejecting petitioner's claim

22  of ineffective assistance of trial counsel was not an objectively unreasonable application of

23  <u>Strickland.</u>

24          For the foregoing reasons, this court finds that the state court's rejection of this

25  claim was neither contrary to nor an unreasonable application of controlling principles of federal

26  law.  This claim should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  October 11, 2005.


UNITED STATES MAGISTRATE JUDGE

/001; neal0719.157